Nos. 2025-1210, -1211

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

MERCK SERONO S.A.,

*Appellant*,

*v.*

HOPEWELL PHARMA VENTURES, INC.,

*Appellee.*

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. IPR2023-00480 and IPR2023-00481.

## REPLY BRIEF FOR APPELLANT MERCK SERONO S.A.

EMILY R. WHELAN
MARK C. FLEMING
JAMES M. LYONS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

GARY M. FOX
NORA N. XU
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, DC  20037
(202) 663-6000

May 7, 2025

DAVID B. BASSETT
JENNIFER L. GRABER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

HELENA RACHAEL MILLION-PEREZ
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO  80202
(720) 274-3135

*Attorneys for Appellant*
*Merck Serono S.A.*

# CERTIFICATE OF INTEREST

Counsel for Appellant Merck Serono S.A. certifies the following:

**1.** **Represented Entities**.  Fed. Cir. R. 47.4(a)(1).  Provide the full names of all entities represented by undersigned counsel in this case.

Merck Serono S.A.

**2.** **Real Party in Interest**.  Fed. Cir. R. 47.4(a)(2).  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

Merck KGaA, Ares Trading S.A.

**3.** **Parent Corporations and Stockholders**.  Fed. Cir. R. 47.4(a)(3).  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Merck KGaA

**4.** **Legal Representatives**.  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

WILMER CUTLER PICKERING HALE AND DORR LLP:  Vinita Ferrera, Deric Geng, Cindy Kan, Asher S. McGuffin, David Mlaver (former), Mary Pheng

**5.** **Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

[X] Yes (file separate notice; see below)    [ ] No    [ ] N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

Already filed.

**6.** **Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: May 7, 2025                    /s/ David B. Bassett
_____
DAVID B. BASSETT
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ..................................................................................i

TABLE OF AUTHORITIES ....................................................................................iv

INTRODUCTION ........................................................................................................1

ARGUMENT ................................................................................................................3

I.   BODOR'S DOSING REGIMEN IS NOT DISCLOSURE "BY ANOTHER" ................3

     A.   The Board Erroneously Imposed A Bright-Line Rule .........................3

          1.   Hopewell misreads precedent ......................................................3

          2.   Hopewell offers no sound policy reason for the
               Board's new bright-line rule ......................................................9

     B.   The Board Violated The APA By Disregarding The
          MPEP Without Notice ..........................................................................10

     C.   The Board Legally Erred In Its Consideration Of Dr. De
          Luca's Contribution To The Relevant Bodor Disclosure ..................15

     D.   The Board Legally Erred In Determining That Drs.
          Bodor And Dandiker Contributed To The Relevant
          Bodor Disclosure ..................................................................................20

II.  MERCK'S INVENTIONS ARE NOT OBVIOUS ......................................................22

III. THE CLAIMS ARE LIMITED TO WEIGHT-BASED DOSING ................................28

CONCLUSION ..........................................................................................................31

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
   960 F.2d 1020 (Fed. Cir. 1992) ..................................................................19, 21

*Allergan, Inc. v. Apotex Inc.*,
   754 F.3d 952 (Fed. Cir. 2014) .........................................................................8, 9

*Applied Materials v. Gemini Research Corp.*,
   835 F.2d 279 (Fed. Cir. 1988) ....................................................................6, 7, 8

*Belden Inc. v. Berk-Tek LLC*,
   805 F.3d 1064 (Fed. Cir. 2015) ..........................................................................11

*BioDelivery Sciences International, Inc. v. Aquestive Therapeutics, Inc.*,
   898 F.3d 1205 (Fed. Cir. 2018) ..........................................................................12

*Brand v. Miller*,
   487 F.3d 862 (Fed. Cir. 2007) ............................................................................28

*Cutsforth, Inc. v. MotivePower, Inc.*,
   636 F. App'x 575 (Fed. Cir. 2016) (nonprecedential)........................................23

*Duncan Parking Technologies, Inc. v. IPS Group, Inc.*,
   914 F.3d 1347 (Fed. Cir. 2019) ....................................................................16, 21

*Ethicon LLC v. Intuitive Surgical, Inc.*,
   847 F. App'x 901 (Fed. Cir. 2021) (nonprecedential)........................................16

*Ethicon, Inc. v. U.S. Surgical Corp.*,
   135 F.3d 1456 (Fed. Cir. 1998) ....................................................................10, 18

*Fleming v. Escort Inc.*,
   774 F.3d 1371 (Fed. Cir. 2014) ..........................................................................17

*Google LLC v. IPA Technologies Inc.*,
   34 F.4th 1081 (Fed. Cir. 2022) ................................................................16, 18, 21

*Homeland Housewares, LLC v. Whirlpool Corp.*,
   865 F.3d 1372 (Fed. Cir. 2017) ..........................................................................26

*In re Cuozzo Speed Technologies, LLC*,
793 F.3d 1268 (Fed. Cir. 2015) .........................................................27

*In re Kaghan*,
387 F.2d 398 (C.C.P.A. 1967) .............................................................11

*In re Kaplan*,
789 F.2d 1574 (Fed. Cir. 1986) .............................................................6

*In re Katz*,
687 F.2d 450 (C.C.P.A. 1982) ...........................................................9, 13

*In re Land*,
368 F.2d 866 (C.C.P.A. 1966) ......................................................3, 4, 5, 6

*In re Schweickert*,
676 F. App'x 988 (Fed. Cir. 2017) (nonprecedential)......................28

*In re Stepan Co.*,
868 F.3d 1342 (Fed. Cir. 2017) .........................................................25

*Medichem, S.A. v. Rolabo, S.L.*,
437 F.3d 1157 (Fed. Cir. 2006) .........................................................24

*Molins PLC v. Textron, Inc.*,
48 F.3d 1172 (Fed. Cir. 1995) ...........................................................13

*NFC Technology, LLC v. Matal*,
871 F.3d 1367 (Fed. Cir. 2017) .................................................17, 18, 19

*Price v. Symsek*,
988 F.2d 1187 (Fed. Cir. 1993) .........................................................17

*Rambus Inc. v. Infineon Technologies Ag*,
318 F.3d 1081 (Fed. Cir. 2003) .........................................................29

*Samsung Electronics Co. v. Power2B, Inc.*,
No. 2023-1630, 2025 WL 471124 (Fed. Cir. Feb. 12, 2025)
(nonprecedential) .............................................................................12

*Securities & Exchange Commission v. Chenery Corp.*,
318 U.S. 80 (1943).............................................................2, 15, 21, 28

*United States v. National Aniline & Chemical Co.*,
  3 U.S. Cust. App. 10 (1912) ...............................................................14

*Vicor Corp. v. SynQor, Inc.*,
  869 F.3d 1309 (Fed. Cir. 2017) .........................................................24

**CONSTITUTIONAL PROVISIONS, STATUTES, AND REGULATIONS**

U.S. Const. art. I, § 8...........................................................................9

5 U.S.C. § 706 ....................................................................................12

35 U.S.C.
  § 102...........................................................................................1, 10, 17
  § 103(a) ...........................................................................................17
  § 262.................................................................................................10

Cooperative Research and Technology Enhancement (CREATE) Act
  of 2004, Pub. L. No. 108-453, 118 Stat. 3596 (Dec. 10, 2004).........10

37 C.F.R. § 1.53(b) (pre-AIA) ............................................................7

**OTHER AUTHORITIES**

Manual of Patent Examining Procedure ("MPEP")
  § 2132.01................................................................................*passim*
  § 2136.04.........................................................................................14
  § 2136.05(b).........................................................................11, 13, 14

*TWi Pharmaceuticals Inc. v. Merck Serono SA*, IPR2023-00049,
  Paper No. 86 (P.T.A.B. Dec. 18, 2024) ............................................24

U.S. Patent No. 3,623,712.....................................................................8

U.S. Patent No. 4,081,313.....................................................................7

Wright, Jon E. & James R. Hietala, *Availability of Prior Art Under
  Pre-AIA Section 102(e) Based on Changing Inventorship* (Aug. 3,
  2021), https://www.sternekessler.com/news-insights/publications/
  availability-prior-art-under-pre-aia-section-102e-based-changing/ ................ 3-4

# INTRODUCTION

The Board adopted a novel, bright-line rule that an earlier disclosure is *necessarily* "by another" under 35 U.S.C. § 102 *unless* precisely the *same* inventive entity conceived both the disclosure and the later-filed patent. Hopewell's attempted defense of that new rule misreads this Court's flexible precedent and fails as a matter of policy, penalizing inventors for collaborating within the one-year statutory grace period.

Imposing the Board's new rule on Merck also violated the APA because it was contrary to the MPEP. Unable to respond to Merck's cited authority holding that patentees are entitled to rely on the MPEP, Hopewell instead disparages the MPEP and ignores agency practice following the guidance for decades. Hopewell does not deny that the Board gave Merck no notice that it would disregard the MPEP until its final written decisions; the law does not expect Merck to predict such a deviation.

Even under the Board's unprecedented rule, the Board erred in faulting Merck for not proving Dr. De Luca's specific contributions to the dosing regimen disclosed in Bodor. Hopewell cites no authority for such a requirement, and does not justify the Board's imposition of the burden of *persuasion* on Merck.

Hopewell separately does not even attempt to defend the Board's analysis at *Duncan Parking*'s first step, where the Board did not ask whether Drs. Bodor and

Dandiker contributed to the disclosure mapped to Merck's claims—especially given that they themselves disclaimed inventing any dosing regimen. At *Duncan Parking*'s second step, Hopewell does not deny that the Board failed to ask who **conceived** 10mg tablets (which were not relied on to challenge Merck's claimed dosing regimen), but rather was satisfied with asking who **manufactured** them. Hopewell's assertion that it is unclear "whose idea it was to develop a[] 10 mg tablet" (Br. 47) only confirms that Hopewell failed to carry its burden of persuasion.

On the merits, Hopewell admits that Bodor and Stelmasiak do not disclose re-treatment with cladribine according to the patented maintenance period. Re-treating a patient who has already taken cladribine would present limitless therapeutic options. Hopewell is left to rely on *post hoc* rationalizations (contrary to *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)) and unsupported, conclusory, and contradicted testimony. Hopewell also identifies no evidence of a motivation to practice Merck's claims, which require a maintenance period after an induction dose and a no-treatment period,[1] even absent disease progression.

Finally, the claims are limited to weight-based dosing. In arguing otherwise, Hopewell ignores clear evidence in the patents and Merck's commercial embodiment Mavenclad® with its FDA-approved label demonstrating that patients

---

[1] This brief sometimes refers to a "cladribine-free period" as a "no-treatment period."

weighing more receive a higher dose of cladribine by taking a greater number of tablets (sometimes ***double***, or even more) in direct proportion to the claimed mg/kg values. Hopewell cannot explain how that could be accomplished without selecting the dose based on patient weight. The Board's decisions should be reversed, or at least vacated.

## ARGUMENT

### I. BODOR'S DOSING REGIMEN IS NOT DISCLOSURE "BY ANOTHER"

#### A. The Board Erroneously Imposed A Bright-Line Rule

Hopewell does not dispute (Br. 24-25) that the Board adopted a bright-line rule—namely, that an earlier disclosure is ***necessarily*** "by another" unless it is by exactly the same inventors as a later-filed patent. Instead, Hopewell claims that the Board's rule is not new. Br. 25-27. But it is new, and it is unjustified.

##### 1. Hopewell misreads precedent

Contrary to Hopewell's assertion (Br. 25-27), *In re Land*, 368 F.2d 866 (C.C.P.A. 1966), does not support the Board's rigid rule. In fact, the law firm representing Hopewell published an article correctly recognizing that "*Land* suggests the earlier patent or published application ***may not*** be prior art, even though it lacks one-to-one overlap in the named inventors." Wright & Hietala, *Availability of Prior Art Under Pre-AIA Section 102(e) Based on Changing Inventorship* (Aug.

- 3 -

3, 2021), https://www.sternekessler.com/news-insights/publications/availability-prior-art-under-pre-aia-section-102e-based-changing/.[2]

Land specifically rejected a bright-line approach, urging that "[e]vidence of [the] state of facts, whatever its form, must be considered." 368 F.2d at 879; *see also id.* at 878 ("The real issue is whether all the evidence, including the references, truly shows knowledge by another prior to the time appellants made their invention or whether it shows the contrary. It is a question of fact."). Thus, as Merck explained (Opening Br. 29), *Land* recognized that determining whether an earlier disclosure is "by another" is not simply a matter of asking whether the disclosure is authored by the same inventors. 368 F.2d at 879 ("The question here is not merely whether A or B, individually, is or is not 'another' to A & B jointly on a theory of 'different legal entities.'"). Rather, courts must consider "[w]hat facts does the evidence here show and what is the evidence?" *Id.* at 880.

Hopewell embarks on a lengthy excursion into *Land*'s facts, which only show how factually different *Land* was. *Land* concerned a rejection of a joint application by Land and Rogers based on **two** individual patents—one solely by Land, the other solely by Rogers. Within the year that both the Land and Rogers individual patents were granted (and thereby published), Land and Rogers filed their joint application.

---

[2]    Emphases added unless otherwise noted.

*Id.* at 875. The individual Land and Rogers patents each claimed priority to applications filed several years before the joint application, meaning they would expire ***over 6 years*** before the joint application. *Id.* at 868. The individual inventors claimed the relevant subject matter in their individual patents, and there was "no indication that the portions of the references relied on disclose anything they did jointly." *Id.* at 881. The Court acknowledged that "there is much to be said on both sides of the question" and narrowly held that "Land and Rogers '606, ***on the facts of this case***, should be regarded as prior art." *Id.*

Thus, the Court's conclusion that the individual Land and Rogers patents were prior art against their joint application did not rest on the mere fact that Land and Rogers individually were not the same inventive entity as Land and Rogers jointly. Were that enough, the opinion would have been much shorter. Rather, *Land* involved the idiosyncratic situation of two inventors who—having separately disclosed their own earlier inventions—were not allowed to remove each other's earlier inventions from the prior art simply by filing another application naming them jointly (which, if granted, would have extended the patent monopoly over those earlier inventions for years). The "real issue" was not some bright-line rule regarding different "inventive entities," but "whether all the evidence, including the references, truly show[ed] knowledge by another prior to the time" of their invention. *Id.* at 878. Merck appropriately cited *Land* (Opening Br. 28-29) for its

pertinent reasoning: The "by another" inquiry does not merely ask whether a prior disclosure is by other "legal entities." 368 F.2d at 879.

The facts of *Land* differ from this case, where Drs. Bodor and Dandiker disclosed—and did not claim—an incomplete excerpt of work shared with them by the Serono team, which undisputedly included Merck's named inventors. Nothing in *Land* suggests that Drs. Bodor's and Dandiker's disclosure of the Serono team's invention could be used against the Serono inventors.

The Court's subsequent cases only confirm the incorrectness of the Board's bright-line rule. *In re Kaplan* restated the "axiomatic" concept that a different inventive entity does not necessarily make an earlier disclosure "by another." 789 F.2d 1574, 1575-1576 (Fed. Cir. 1986). *Applied Materials v. Gemini Research Corp.* likewise stated that "the fact that an application has named a different inventive entity than a patent does ***not necessarily*** make that patent prior art" if the application and the earlier patent "share ***one or more*** persons as joint inventors." 835 F.2d 279, 281 (Fed. Cir. 1988). Indeed, "the ***addition*** of [another] as an inventor" did not make the earlier disclosure "by another" even though the earlier disclosure and the later application were "conceived by different inventive entities." *Id.* at 280-281.

Attempting to evade *Applied Materials'* clear holding, Hopewell mistakenly contends that "the earlier patent did not qualify as a 102(e) reference because

although it claimed only the invention of McNeilly and Benzing, it disclosed the invention of McNeilly, Benzing, and Locke." Br. 32-33. Hopewell speculates that "[w]e know this because the ground of the rejection was *anticipation*" (Br. 33 (emphasis Hopewell's)), but that is unfounded. An examiner's anticipation rejection does not establish that every element in the rejected claims was definitively in the prior disclosure; anticipation rejections can be overcome "by persuasively arguing that the claims are patentably distinguishable from the prior art." MPEP § 2132.01. Additionally, Hopewell's contention ignores Merck's explanation (Opening Br. 31) that Locke was added in a ***continuation-in-part***, *Applied Materials*, 835 F.2d at 280, which allows inventors to "disclose and claim subject matter not disclosed in the prior application," 37 C.F.R. § 1.53(b) (pre-AIA). Thus, there is no basis for Hopewell's assumption that "the disclosure in the earlier patent necessarily happened only *after* the invention of the McNeilly-Benzing-Locke invention" (Br. 33 (emphasis Hopewell's)). In fact, it is likelier that Locke's contribution came later and prompted his addition to the later patent. The later McNeilly-Benzing-Locke application describes "a process and apparatus for heating single crystal substrates directly to produce wafers having little or no crystallographic slip" and claims a "method for heating a plurality of substrate members formed of a single crystal material with substantially no crystallographic slip." U.S. Patent No. 4,081,313(3:14-16, claim 1). Neither a "crystal" nor "wafers having little or no

crystallographic slip" appear in the earlier McNeilly-Benzing patent. *See* U.S. Patent No. 3,623,712.

Hopewell fares no better in attempting to explain away *Applied Materials'* holding that when "a[ later] application and a[n earlier] patent have been conceived by different inventive entities," that does not necessarily render the earlier disclosure "by another." 835 F.2d at 281. Hopewell dwells on the difference between "what is *claimed*" and "what is *disclosed*" in a reference (Br. 32 (emphasis Hopewell's)), but *Applied Materials* does not rest on that distinction. The subject matter described and claimed in the later McNeilly-Benzing-Locke application ("a single crystal material with substantially no crystallographic slip") was nowhere in the earlier McNeilly-Benzing patent, and the Court still found the patent was not "by another."

*Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952 (Fed. Cir. 2014), confirms *Applied Materials'* holding that adding later collaborators does not, by itself, prevent earlier inventors from patenting a disclosed invention they conceived. *See* Opening Br. 32. *Allergan* acknowledged that adding a contributor (Woodward) to a later patent would not make an earlier disclosure by a co-inventor (VanDenburgh) "by another." 754 F.3d at 969. Rather, the disclosure was "by another" because the patentee was unable to show that it was VanDenburgh's alone (and not by additional individuals not named on the later patent, *e.g.*, Brandt, Chen, or Whitcup). *Id.* The Court explained that, had the earlier disclosure been VanDenburgh's alone, it would ***not***

have been prior art against the VanDenburgh-Woodward patent. *Id.* Tellingly, Hopewell does not even ***cite*** *Allergan*, which squarely refutes the Board's bright-line rule.

### 2. Hopewell offers no sound policy reason for the Board's new bright-line rule

Beyond being irreconcilable with cases like *Applied Materials* and *Allergan*, the Board's bright-line rule has no support as a matter of policy. If allowed to stand, it would undermine Section 102's protection of collaboration between original inventors and additional inventors during the one-year grace period. *See* Opening Br. 27-28. Hopewell does not even attempt (Br. 39 n.7) to refute Merck's numerous examples (Opening Br. 34-35 n.11) of Board decisions and notices of allowance demonstrating that—at least until the Board's decision in this case—the Board and examiners routinely declined to treat disclosures derived from a subset of inventors as "by another."

Hopewell's contention that there is no reason "why Bodor should not count as prior art against De Luca" if "relevant portions of Bodor reflect no contribution by him" (Br. 34-35) ignores that collaboration with later inventors serves important interests "to perfect, develop and apply for a patent," *In re Katz*, 687 F.2d 450, 454 (C.C.P.A. 1982), and "promote the Progress of Science and useful Arts," U.S. Const. art. I, § 8. Patent law specifically allows joint inventors to benefit from their co-inventors' contributions, providing each co-inventor an undivided interest in the

entire patent. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1465-1466, 1468 (Fed. Cir. 1998) ("[W]here inventors choose to cooperate in the inventive process, their joint inventions may become joint property."); 35 U.S.C. § 262. Section 102 is narrowly tailored to permit this kind of cooperation, providing just one year from the disclosure for any additional contributions by others; disclosures more than one year old are always prior art.

Unable to deny that innovation often involves collaboration among different inventors, Hopewell insists (Br. 35-36) that this important policy was preserved by Section 103(c)'s CREATE Act amendments. But the CREATE Act and Section 103(c) apply only to Section 102(e)-(g) prior art, *see* Pub. L. No. 108-453, and provide *no* safeguard for Section 102(a) art, which was also a basis for the Board's decision (*see* Appx28-40). Hopewell's arguments have no bearing on printed publications or patent publications that cannot be disqualified under Section 103(c). And because Section 103 pertains to obviousness, it provides no protection when a patent is challenged as anticipated, as Merck's patents were in the co-pending TWi IPRs. Thus, the CREATE Act does not offset the negative policy implications of the Board's decision.

### B. The Board Violated The APA By Disregarding The MPEP Without Notice

Hopewell recognizes (Br. 37) that MPEP § 2132.01 explicitly provides that "*at least one* joint inventor's disclosure of *his or her own work*" within the year

before the application filing date cannot be used against the application as prior art" (*see also* MPEP § 2136.05(b))—language that Merck cited to the Board as directly supporting Merck's position. Appx11801; Appx11861. As Merck explained (Opening Br. 36-37), patentees are entitled to rely in good faith on the Patent Office's published procedures. *In re Kaghan*, 387 F.2d 398, 400-401 (C.C.P.A. 1967).[3] Hopewell has no response to *Kaghan*. And Hopewell cites no basis for its assertion that Merck's examples of the Patent Office following this procedure (Opening Br. 34-35 n.11) show examiners "apparently accepting deficient inventorship declarations" and the Board "not squarely address[ing] the requirements for 102(e) prior art." Br. 39 n.7. The more plausible explanation is that examiners and other Board panels are following the MPEP, as Merck urged the Board to do. If the Board believed that the law permitted a contrary approach, it was required to give Merck notice of its new rule and an opportunity to satisfy it. *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1080 (Fed. Cir. 2015) ("[A]n agency may not change theories in midstream without giving respondents reasonable notice of the change and the opportunity to present argument under the new theory." (quotation marks omitted)).

---

[3]     To the extent there is any ambiguity in this Court's precedent (*supra* pp. 3-9), Merck was entitled to rely on the MPEP interpretation and the Patent Office's application thereof.

Hopewell alleges (Br. 37) that Merck somehow forfeited its ability to ask this Court to correct the Board's APA violation. But the APA authorizes this Court to "compel agency action unlawfully withheld." 5 U.S.C. § 706. Merck also preserved its argument that the Board should follow the MPEP. *See* Appx11861 ("The MPEP in 2136.05(b) actually addresses that scenario and explains that the work by a subset of inventors is not by another."); Appx11801 ("The USPTO's published guidance is that the work of a subset of named inventors is ***not*** prior art." (citing MPEP § 2132.01) (emphasis in original)). At the hearing, the Board did not doubt the MPEP's applicability (Appx11864), and in requesting post-hearing briefing, instructed: "If you want to cite the MPEP, that's fine," Appx11895. Hopewell never argued that the Board should not follow the MPEP—not at the hearing (Appx11890-11891) or in its post-hearing briefing on this point (Appx11805). Indeed, the Board did not suggest that it would disregard the MPEP until the final written decisions. Merck cannot have forfeited a response to a new legal rule it had no reason to expect the Board to adopt. *BioDelivery Scis. Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 898 F.3d 1205, 1209 (Fed. Cir. 2018) ("waiver does not apply" after "a significant change in law"). Merck's argument is also fully "consistent with arguments below." *Samsung Elecs. Co. v. Power2B, Inc.*, No. 2023-1630, 2025 WL 471124, at *4 (Fed. Cir. Feb. 12, 2025).

Hopewell argues that the MPEP "does not have the force of law" (Br. 38-39), but the actual language from Hopewell's cited case supports Merck: "While the MPEP does not have the force of law, ***it is entitled to judicial notice*** as an official interpretation of statutes[.]" *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 n.10 (Fed. Cir. 1995). Merck's position is not that the MPEP "bind[s]" this Court (Br. 38-39), but that Merck reasonably relied on the MPEP's interpretation and, if this Court disagrees with that interpretation, it should at least remand.

Hopewell cannot redeem the APA violation by pointing to *Katz* as the "only authority" cited in MPEP § 2132.01. Br. 39-40. First, Merck cites MPEP § 2136.05(b) (Opening Br. 34), which includes other supporting authority, including *Applied Materials*. Second, *Katz* does not require the "*same* inventive entity on the challenged patent." Br. 39-40 (emphasis Hopewell's). *Katz* explains that an inventor is "allowed to perfect, develop and apply for a patent on his invention and publish descriptions of it if he wishes." 687 F.2d at 454. It does not matter that Katz was a sole inventor; the Court held that naming others on the earlier disclosure did not prevent Katz from later getting a patent on his own invention. That is why MPEP § 2132.01 provides that "***at least one*** joint inventor's disclosure of ***his or her own work***" cannot be used against the application. Third, Hopewell incorrectly contends (Br. 40) that Merck cites no case on this issue. In addition to Merck's detailed explanation of *Applied Materials* (Opening Br. 29-32), Merck also explains that

*Allergan* recognized this practice (Opening Br. 32), which Hopewell does not even cite, let alone distinguish.

Hopewell also misreads (Br. 37-38) MPEP § 2136.04, which provides the unremarkable meaning of "by another": If other people invented the **earlier** disclosure but are not named on the later patent, then the earlier disclosure is "by another." But if MPEP § 2136.04 were inconsistent with MPEP §§ 2132.01 and 2136.05(b)—though it is not—the proper remedy would be to remand to allow Merck a chance to provide evidence under the Board's new legal interpretation.

Finally, Hopewell cannot evade proper application of the APA simply because it believes it "will take time." Br. 40. Hopewell chose to pursue an IPR, an agency proceeding subject to the APA; it cannot insist that Merck give up its rights under that statute or that this Court ignore it, simply because that would not serve Hopewell's interests. Nobody forced Hopewell to file IPRs instead of following the Hatch-Waxman process for litigation in district court, and nobody forced Hopewell to ask for (and receive) a stay of the district court litigation, which otherwise could have produced an earlier decision ending the 30-month stay. This Court is already hearing this appeal on an expedited basis. Because the APA requires at least a remand, this Court should at least remand. *See United States v. National Aniline & Chem. Co.*, 3 U.S. Cust. App. 10, 18 (1912) ("Whenever it appears to be necessary

for the purposes of justice, the appellate court will remand for such further proceedings as the circumstances of the particular case may require.").

### C. The Board Legally Erred In Its Consideration Of Dr. De Luca's Contribution To The Relevant Bodor Disclosure

Even under the Board's incorrect bright-line rule, the relevant disclosure in Bodor was derived from all four named inventors, and was thus by the same inventive entity. *See* Opening Br. 37-38. Hopewell admits (Br. 34) that at least three of Merck's named inventors contributed to Bodor, but insists (Br. 41-46) that the Board was correct to find that Dr. De Luca did not contribute to relevant disclosures in Bodor. Hopewell's arguments are flawed for multiple reasons.

First, to the extent Hopewell argues (Br. 42-43) that Merck was required to show that Dr. De Luca contributed not only to the dosing regimen disclosed in Bodor's 6-line sentence, but also to other parts of Bodor, this argument is insufficiently developed, as it does not even mention Dr. De Luca, and takes a position the Board did not adopt. *See* Appx30-37. Besides being erroneous on its own terms (*see* Opening Br. 43-45; *infra* p. 16), the Board's analysis of other disclosures in Bodor under *Duncan Parking*'s first step was limited to Drs. "Bodor's and Dandiker's [c]ontribution," Appx37-38. Hopewell cannot offer a *post hoc* rationalization of the Board's determination regarding Dr. De Luca that the Board did not itself articulate. *Chenery*, 318 U.S. at 87.

In any event, Hopewell's arguments are legally unsupported because none of the other disclosures in Bodor was mapped to Merck's **claim limitations**. *See Ethicon LLC v. Intuitive Surgical, Inc.*, 847 F. App'x 901, 909 (Fed. Cir. 2021). Hopewell's attempt (Br. 42-43) to distinguish disclosure relied on in obviousness cases from disclosure relied on in anticipation cases misapplies *Duncan Parking Technologies, Inc. v. IPR Group, Inc.*, which focused on whether the "patent claims clearly include **elements** previously disclosed." 914 F.3d 1347, 1358-1359 (Fed. Cir. 2019); *see also id.* at 1358 (comparing claim elements with earlier disclosure). Hopewell relies on *Google LLC v. IPA Technologies Inc.* (Br. 42-43), but the Court there explained that "[t]he portions of the reference being considered must be relied upon *and* relevant to establishing obviousness" so patent challengers cannot "artificially alter the inventive entity … by citing extraneous portions." 34 F.4th 1081, 1086 n.3 (Fed. Cir. 2022) (emphasis in original). Patent challengers cannot manipulate a reference's prior-art status by strategically invoking passages that the patent's named inventors did not invent, merely because they may provide some scintilla of knowledge in the art or general motivation to improve an invention.

Hopewell's anticipation/obviousness distinction also fails as a matter of logic. If the portions of a reference used to challenge the claim limitations are not "by another," it cannot matter if peripheral disclosures were prior art, because the obviousness challenge would fail without the disclosure used for teaching the claim

limitations. Under Hopewell's theory, a patent challenger could invoke a known concept that could motivate a skilled artisan to combine references, such as Bodor's teaching of "fine-tuning," to turn everything in the reference into prior art. Hopewell's interpretation would also lead to the nonsensical result of a reference being prior art for obviousness under Section 103 but not anticipation under Section 102, which runs contrary to Section 103's mandate that a reference must first qualify as prior art under Section 102. 35 U.S.C. § 103(a) (pre-AIA).

Second, Hopewell conflates (Br. 41-46) the Board's legal error requiring Merck to provide evidence of Dr. De Luca's specific contribution to the relevant Bodor disclosure (*see* Appx32-34) with a "factual finding" that Dr. De Luca did not contribute to the disclosure. Hopewell does not grapple with Merck's cited cases demonstrating that the Board applied the wrong legal standard: The Board should have asked whether Dr. Munafo's general account (including that Dr. De Luca contributed to the dosing regimen) was credible, not whether Merck (which bore no burden of persuasion) established Dr. De Luca's specific contribution. *See* Opening Br. 39-40 (citing *NFC Tech., LLC v. Matal*, 871 F.3d 1367, 1372 (Fed. Cir. 2017); *Price v. Symsek*, 988 F.2d 1187, 1196 (Fed. Cir. 1993); *Fleming v. Escort Inc.*, 774 F.3d 1371, 1377 (Fed. Cir. 2014)).

Hopewell argues that no one knows "what, if anything, De Luca contributed to the dosing regimen disclosed in Bodor." Br. 44-45. That is precisely what Merck

was **not** required to prove under a "rule of reason" analysis. *See U.S. Surgical*, 135 F.3d at 1461 ("Whether the inventor's testimony has been sufficiently corroborated is evaluated under a 'rule of reason' analysis. … Corroborating evidence may take many forms."). Hopewell identifies no authority requiring that Dr. De Luca "testify in this case," that Dr. Munafo "identify what contribution De Luca made," or that the documents "indicate[] any such contribution." Br. 44-46. Rather, "[t]here is no particular formula that an inventor must follow," and circumstantial evidence can provide corroboration. *NFC*, 871 F.3d at 1371-1372. For example, in *Google*, an inventor's testimony regarding his own contribution to the disclosure "was sufficiently corroborated" by facts including one inventor's "***acknowledgement*** of [the other inventor]'s technical contributions to the … project" (not a recounting of his specific contributions). 34 F.4th at 1088. Here too, Dr. Munafo stated that "Dr. De Luca … contributed to our development of [the] proposed dosing regimen." Appx7580(¶21). Contemporaneous documents can also provide corroboration despite a "lack of detail relating to ***what***" the inventor did specifically, *e.g.*, if the inventor's name is on the document, if the document is about the project, and if the dates align with the project. *NFC*, 871 F.3d at 1373. Here, the 2003 Amsterdam Minutes specifically named Dr. De Luca, laid out Serono's dosing-regimen plan at

the time, and were dated contemporaneously with the project. Appx7200.[4] Thus, under the "rule of reason," Dr. Munafo's testimony and other evidence reasonably demonstrated that Dr. De Luca is a co-inventor of the relevant Bodor disclosure, especially because Hopewell, not Merck, has the burden of persuasion.

Hopewell tries to brush aside the Board's improper burden shifting as simply finding "that Merck failed to come forward with evidence sufficient to overcome the *prima fac*[*i*]*e* case that Bodor is by another." Br. 41. Hopewell has no response to Merck's demonstration (Opening Br. 42-43) that the Board improperly shifted the ultimate burden of persuasion by requiring Merck to affirmatively "show that De Luca must necessarily be a coinventor of Bodor's 6-line disclosure," Appx33-34. Hopewell does not address Merck's cited cases where the Court found similar demands "of showing" to be erroneous shifts of the burden of persuasion. Merck needed only to "com[e] forward with sufficient evidence," *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992), that Dr. De Luca contributed—which Merck undoubtedly did, including through Dr. Munafo's

---

[4]    Hopewell ventures that the 2003 Amsterdam Minutes' reference to "J.P. deLuca" (Appx7200) does not "refer to named inventor G. De Luca." Br. 10 n.4, 45 & n.8. Dr. De Luca's first name, Giampiero, is Italian for "John-Peter," abbreviated "J.P." In *NFC*, a contemporaneous data sheet identifying "BC" was "strong evidence" that the inventor "Bruno Charrat" contributed to the invention. 871 F.3d at 1372.

testimony that "Dr. De Luca … contributed to our development of [the] proposed dosing regimen," Appx7580(¶21).  Proving otherwise was Hopewell's task.

### D. The Board Legally Erred In Determining That Drs. Bodor And Dandiker Contributed To The Relevant Bodor Disclosure

The Board misapplied *Duncan Parking*.  *See* Opening Br. 43-48.  Hopewell fails to address (Br. 46-48) Merck's explanation that the Board (1) should not have looked at Drs. Bodor's and Dandiker's contribution to a cladribine-cyclodextrin complex in a solid dosage form, which is not required by Merck's claims (Opening Br. 45-46), and (2) should have focused on what, if anything, they ***conceived***, not what they manufactured (Opening Br. 46-48).[5]

First, Hopewell does not deny (Br. 46-48) that Merck's patent claims do not require a solid dosage form or a cladribine-cyclodextrin complex.  Rather, Hopewell seems to assume that the dosage form and cladribine-cyclodextrin complex count as relied-upon portions of Bodor simply because the words appear in the "six lines in Bodor that Merck focuses on."  Br. 46.  Hopewell has no response to Merck's explanation (Opening Br. 46) that altering the *Duncan Parking* analysis to include disclosure not mapped to the patent claims would allow patent challengers to

---

[5]    Hopewell at most responds (Br. 42-43) only to Merck's reasoning that disclosures outside Bodor's 6-line sentence should not have been considered (though Hopewell appears concerned only with Dr. De Luca's contribution to those disclosures, not Drs. Bodor's and Dandiker's).  Hopewell's arguments fail, as explained above (p. 16).

"artificially alter the inventive entity … by citing extraneous portions," which would lead to absurd and unjustifiable results. *Google*, 34 F.4th at 1086 n.3; *see supra* p. 16.

Second, Hopewell does not deny that the record lacks evidence that Drs. Bodor and Dandiker ***conceived*** the 10mg cladribine tablets. Indeed, Hopewell insists that it was unknown "whose idea it was to develop a 10 mg tablet." Br. 47. Because Hopewell bore the burden of persuasion, a record in equipoise requires a finding for Merck. *See Aukerman*, 960 F.2d at 1039. That said, the record is not in equipoise; Merck offered overwhelming evidence that Serono, not IVAX, conceived a 10mg tablet. *E.g.*, Appx7200; Appx7180; Appx7586-7596(¶¶33-54).

Third, Hopewell's admission reinforces the Board's legal error in failing to "evaluate the degree to which those portions were ***conceived*** 'by another.'" *Duncan Parking*, 914 F.3d at 1358. To the extent Hopewell now points (Br. 47) to a provisional application naming Dr. Bodor, Hopewell cannot defend the Board's decision based on evidence the Board did not rely on (*see* Appx38-40). *Chenery*, 318 U.S. at 87. Moreover, that provisional shows nothing; it was filed on February 4, 2004 (Appx7043), ***after*** the 2003 Amsterdam Minutes and Briefing Document, which described Serono's planned study to include treatments with 10mg oral cladribine tablets. Appx7180; Appx7200. Notably, Dr. Bodor's earlier provisional applications did not mention 10mg tablets. *See* Appx7002-7023; Appx7024-7042.

And none of Bodor's PCT application, provisional applications, or corresponding U.S. patents *ever* claimed a 10mg cladribine dose, whereas Merck's inventors claim that as their inventions. *See* Appx201(claim 45); Appx213(claim 26).

## II. MERCK'S INVENTIONS ARE NOT OBVIOUS

Hopewell admits that "Bodor ***does not expressly teach*** retreatment after the cladribine-free period" and "Stelmasiak's maintenance dose ***is different*** from the claimed maintenance do[se]." Br. 51. Hopewell also agrees that neither Bodor nor Stelmasiak "taught precisely the claimed retreatment protocol." Br. 51 (emphasis omitted). To arrive at Merck's patented dosing regimen, a skilled artisan would have needed to choose among numerous different drugs, doses, and/or dosing periods—the combination of which would have led to unlimited options—with no guidance regarding which combination would have been effective and safe. *See* Opening Br. 49. Instead of considering these important factors, the Board assumed—based only on unsupported, conclusory, and contradicted expert testimony—that Bodor suggests not only re-treatment, but re-treatment after the claimed induction and no-treatment periods. Appx53. The Board further concluded that a skilled artisan would have arrived at the claimed maintenance period in view of Stelmasiak, ignoring Stelmasiak's drastically different teachings for subsequent cladribine treatment without any support or reason. Appx58. This was not a mere "battle of

the experts" (Br. 49); no non-conclusory testimony supported the Board's conclusion.

Many of Hopewell's arguments rely on evidence the Board never credited or explained why it credited. For instance, Hopewell wrongly asserts (Br. 50) that the Board at Appx53 credited Hopewell's expert at Appx1033-1039(¶¶39-49), but Appx53 does not mention paragraphs 39-49. Hopewell also claims (Br. 50) that the Board at Appx44 credited a paragraph regarding a skilled artisan's understanding of Bodor in view of MS's characteristics (Appx1061(¶87)). But the Board only *summarized* what "Dr. Miller testifie[d]" (Appx44) and later conclusorily "credit[ed] Dr. Miller's testimony, discussed above, explaining how those claim limitations would have been obvious from at least Bodor's teachings." Appx46. The Board "does not provide enough explanation" by merely "summarizing the parties' arguments and offer[ing] only conclusory analysis of its own." *Cutsforth, Inc. v. MotivePower, Inc.*, 636 F. App'x 575, 578-579 (Fed. Cir. 2016).

In the testimony the Board actually cites (Appx53 (citing Appx1059-1061(¶¶84-86)), Hopewell's expert contended only that Bodor contemplates "*some* retreatment," as Hopewell recognizes (Br. 50), not the *claimed* maintenance period. Subsequent cladribine therapy based on Bodor would have presented an unending list of permutations. *See* Opening Br. 49. An obviousness finding cannot be supported by testimony that requires "vary[ing] all parameters or try[ing] each of

numerous possible choices until one possibly arrived at a successful result, where the prior art gave either no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006). As the Board recognized in the TWi IPRs, "any subsequent maintenance period and dosing amount is ***at best speculative*** based on Bodor's disclosure." IPR2023-00049, Paper No. 86 at 36. At the least, a remand is required to address the inconsistency with the Board's contrary conclusion in the TWi IPRs. *See Vicor Corp. v. SynQor, Inc.*, 869 F.3d 1309, 1323 (Fed. Cir. 2017) (remanding for the Board to "provide some reasoned basis for its opposite holdings").

Hopewell cannot rectify Bodor's deficiencies with its incorrect contention that Merck "conceded" anything during prosecution. Br. 51. Merck unwaveringly argued during prosecution that Bodor never teaches "repeating a treatment course at ***any*** point in time." Appx2132. In responding to the examiner's assumption that Bodor "implied" repeating the initial treatment, Merck explained that even "if one were to accept this 'implied' teaching in Bodor," the art still does not teach the claimed regimen. Appx2132.

Contrary to Hopewell's assertion (Br. 51), Stelmasiak cannot fill Bodor's void. *See* Opening Br. 53. No evidence supports the Board's disregard of Stelmasiak's treatment regimen, which is nowhere close to Merck's claimed

regimen. Stelmasiak's subsequent cladribine treatment—one-sixth the size (50mg) of the initial total dose (300mg), administered at month 9 after two months without any drug (Appx1849)—differs markedly from the claimed maintenance period of about 1.7mg/kg, which could be the same as the claimed induction dose, after an 8-10 month no-treatment period. This, again, is no "battle of the experts" (Br. 49); the Board provided *no* evidentiary support for its circular logic that Stelmasiak's regimen is "inapposite" simply because one would purportedly optimize from Bodor's *lack* of re-treatment. *See* Appx58. Hopewell fails to explain (Br. 50) how the Board could rely on expert testimony using Bodor—which has no data—as a "starting point," while disregarding (without support) that Stelmasiak and its data teach a specific subsequent cladribine treatment that *differs* from the claims.

The Board's unsupported "routine optimization" statements do not fill the gap either. *See* Opening Br. 57-59. Hopewell offers (Br. 51-52) no data, reason, or goal on which to base such optimization. Merely "[s]tating that a person of ordinary skill in the art would have arrived at the claimed invention through routine optimization falls short" without "an explanation as to *why*." *In re Stepan Co.*, 868 F.3d 1342, 1346 (Fed. Cir. 2017) (emphasis in original).

The Board's unelaborated citation to testimony regarding monitoring lymphocyte levels (Appx54 (citing Appx1074-1076(¶¶102-104))) does not provide substantial evidence either. *See* Opening Br. 57-59. Tellingly, Hopewell's appeal

brief does not discuss that testimony at all, despite pressing that theory before the Board. Hopewell also ignores Merck's demonstration (Opening Br. 58) that Hopewell's expert admitted that there is **no** particular lymphocyte level to which a skilled artisan could or would optimize cladribine treatment for MS patients, because "lymphocyte suppression is not a measure of ***efficacy***." Appx6272(121:17-18); *see also* Appx8211-8214(40:10-43:6); Appx5505(¶90).[6] Rather, it is measured for safety. Hopewell's expert agreed that lymphocyte level does not need to be reduced to treat MS. Appx8213-8214(42:15-43:6). And as Hopewell recognizes (Br. 55), even the Board agreed that there is no optimal level. The glaring error with optimizing based on lymphocyte level is that a skilled artisan cannot "routinely optimize" without ***any*** idea of ***what level*** would provide a relevant target for effective treatment (or any other reason). Thus, Hopewell's expert's conclusory optimization testimony based on lymphocytes (Appx1074-1076(¶¶102-104)) contradicts his own testimony and the record. *See Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1378 (Fed. Cir. 2017) ("[W]e must disregard the testimony of an expert that is plainly inconsistent with the record[.]").

---

[6]     Hopewell oversimplifies (Br. 55) testimony from Merck's expert, who at most stated that there "can" or "might" be some interplay between cladribine and lymphocyte level, but explained that he could not "definitively" answer Hopewell's vague questions. *See* Appx4475-4477.

Additionally, Hopewell points to no evidence of a motivation to combine Bodor and Stelmasiak or a reasonable expectation of success in doing so. As Merck explained (Opening Br. 53-57), there was widespread skepticism regarding use of cladribine to treat MS—a skepticism shared by Hopewell's own expert before these IPRs. Appx6059. Hopewell cites (Br. 54) *In re Cuozzo Speed Technologies, LLC*, 793 F.3d 1268, 1281 (Fed. Cir. 2015), to wrongly presuppose that Merck's claims "read on obvious subject matter," when Hopewell never established a motivation to combine Bodor and Stelmasiak to administer cladribine as claimed, even absent disease progression after the no-treatment period.[7]

Contrary to Hopewell's assertion (Br. 52), the Board did not reject Merck's showing that prior art required satisfaction of several criteria before any re-treatment. Hopewell's cited sentence refers to the art supposedly "suggest[ing] retreating patients with cladribine as needed" (Appx57), but that does not speak to criteria necessary for re-treatment, nor the regimen for re-treatment. Hopewell cannot generically point to the chronic nature of MS to fill the gaps between its references and Merck's claims.

---

[7] Hopewell's criticism of X-rays as "not analogous" to chronic degenerative diseases (Br. 49) misses the point. When patients do not meet certain criteria, doctors will not re-treat them—even for chronic diseases like MS. *E.g.*, Appx1888 (Rice).

Hopewell attempts to excuse (Br. 53) the Board's discussion of Hopewell's expert testimony about what a skilled artisan ***could*** consider, not what a skilled artisan ***would*** do, which impermissibly relies on hindsight. *See In re Schweickert*, 676 F. App'x 988, 996 (Fed. Cir. 2017). But Hopewell focuses on paragraph 17 of its expert declaration for what a skilled artisan "would" do—a paragraph the Board ***never*** cited. Hopewell cannot salvage the Board's decision on new grounds. *Chenery*, 318 U.S. at 87.

Finally, the Board erred in offering its own view of Rice when faced with a lack of testimony from Hopewell's expert that could explain his sudden embrace of cladribine as a "promising" MS treatment. *See* Opening Br. 56. Hopewell simply echoes (Br. 54-55) the Board's interpretation of Rice, which skirts the fundamental problem of the Board substituting its own opinion to fill gaps in the record. *See Brand v. Miller*, 487 F.3d 862, 869 (Fed. Cir. 2007) ("[I]t is impermissible for the Board to base its factual findings on its expertise, rather than on evidence in the record[.]"). The Board's obviousness determination is thus unsupported by evidence.

## III. THE CLAIMS ARE LIMITED TO WEIGHT-BASED DOSING

The claims' plain language and the intrinsic and extrinsic evidence confirm the requirement of weight-based dosing. *See* Opening Br. 59-63. Hopewell's contrary arguments ignore the record.

The claims recite doses in milligrams of drug per kilogram of patient weight, meaning that the dose must be administered based on patient weight. *See* Opening Br. 59. Hopewell does not explain how one could select the proper dose of cladribine without knowing the patient's weight. Hopewell accuses (Br. 57-58) Merck of adding a step to the claims, but as Merck explained (Opening Br. 62), the mere fact that practicing the claims as written will often arise in certain circumstances does not equate to reading a limitation into the claims; claims need not always explicitly recite every necessary component. *Rambus Inc. v. Infineon Techs. Ag*, 318 F.3d 1081, 1093 (Fed. Cir. 2003). Hopewell has no response to *Rambus*.

Hopewell's example (Br. 58) only bolsters Merck's position: A 100kg patient would need to take 170mg of cladribine to reach a dose of 1.7mg/kg, whereas a 70kg patient would need only 120mg. The difference between 170mg and 120mg is five 10mg tablets, and the number of tablets would vary at the time of administration ***based on patient weight***. *See* Opening Br. 60-61. As Table 3 of Merck's patents shows, heavier patients can require double (or even more) the cladribine dose of lighter patients. Appx199(tbl.3).

As Merck explained (Opening Br. 61-62), two excerpts and a table in Merck's patents (Appx198-199(14:41-44, 14:63-66, tbl.3)) all show how the cladribine dose varies by patient weight. Hopewell leaves this evidence unaddressed. The same is true for the FDA-approved label of Mavenclad® (Appx6005), which undisputedly

practices the patented invention. Even Hopewell's expert admitted that the label indicates how many tablets a patient will take ***depending on their weight***. Appx6132-6133(4:17-5:1). Hopewell also leaves this evidence and its expert's admission unaddressed.

Hopewell is wrong (Br. 59-60) that Bodor is inconsistent. Bodor describes a flat-dosing regimen involving the administration of five to seven 10mg tablets of cladribine ***regardless of patient weight***. Appx1939. Bodor's reference to "about 0.04 to about 1.0 mg/kg/day" describes doses reported by an earlier reference, not Bodor's dosing regimen. Appx1938.

Hopewell's argument (Br. 60) regarding the specifications' discussion of the Grieb reference similarly fails. The specifications merely state the result of an after-the-fact calculation of Grieb's dose based on the weights of actual patients, demonstrating the novelty and uniqueness of the claimed dosing regimen. *See* Appx193; Appx1972. All patients in Grieb received the same dose of cladribine, even though they differed in weight. Merck does not "hold[] Bodor to a higher disclosure standard than Merck's own patents," Br. 60. Weight-based doses can be calculated based on total dose and patient weight, and the "mg/kg" units in Merck's patents require that the dose be selected based on patient weight.

Stelmasiak casts doubt on weight-based dosing, stating that there was "no indication that a 'good response' is related to the actual cladribine dose per body

weight." Appx1851. Parroting the Board (*see* Appx52-53), Hopewell focuses

narrowly on whether Stelmasiak's disclosures constitute "teaching away." Br. 58-

59. Merck's point is that Stelmasiak discourages the weight-based dosing that

Merck's claims require. Indeed, Hopewell does not dispute that Stelmasiak does not

teach weight-based dosing. Thus, under the proper claim interpretation, the Board's

decisions should be reversed.

## CONCLUSION

The Board's decisions should be reversed or, at minimum, vacated.

Respectfully submitted,

/s/ David B. Bassett

| | |
|---|---|
| EMILY R. WHELAN | DAVID B. BASSETT |
| MARK C. FLEMING | JENNIFER L. GRABER |
| JAMES M. LYONS | WILMER CUTLER PICKERING |
| WILMER CUTLER PICKERING | HALE AND DORR LLP |
| HALE AND DORR LLP | 7 World Trade Center |
| 60 State Street | 250 Greenwich Street |
| Boston, MA 02109 | New York, NY 10007 |
| (617) 526-6000 | (212) 230-8800 |

EMILY R. WHELAN
MARK C. FLEMING
JAMES M. LYONS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

GARY M. FOX
NORA N. XU
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, DC 20037
(202) 663-6000

DAVID B. BASSETT
JENNIFER L. GRABER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

HELENA RACHAEL MILLION-PEREZ
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
(720) 274-3135

*Attorneys for Appellant*
*Merck Serono S.A.*

May 7, 2025

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1.     The filing has been prepared using a proportionally spaced typeface and includes 6,995 words.

2.     The filing has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ David B. Bassett
DAVID B. BASSETT
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

May 7, 2025